JORDAN, Circuit Judge,
concurring in part and dissenting in part.
The text of 28 U.S.C. § 2255(e) has remained unchanged since 1948, despite Congress’ significant overhaul of federal collateral review in 1996. Given the difficult task of deciphering language designed for a bygone era in a post-AEDPA world, it is no wonder that federal courts have struggled to reach a uniform understanding. Recognizing that the meaning of § 2255(e) “is not easy of solution,” United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221, 73 S.Ct. 227, 97 L.Ed. 260 (1952), I offer my own perspective.
I agree with the majority’s ultimate conclusion that the “saving clause” of § 2255(e) does not permit sentencing claims like the one asserted by Mr. McCarthan. But my reading of the “saving clause” is broader than the one articulated by the majority. In my view, the “saving clause” allows a federal prisoner to seek a *1102 writ of habeas corpus pursuant to 28 U.S.C. § 2241 if § 2255 relief is unavailable to him and a new (and governing) interpretation of the statute of conviction demonstrates that he never committed a crime. Because the majority’s reading of § 225|5(e) apparently forecloses a habeas remedy in such circumstances, I concur only in the judgment.
I
Suppose that Congress enacts a new criminal statute, 18 U.S.C. § 999.99, and makes a violation of that statute punishable by up to ten years in prison. The Department of Justice believes that persons who commit acts A and B violate § 999.99, and sets out to prosecute persons who have, committed those acts.
A federal grand jury in the Southern District of Florida indicts Joe Unlucky for violating § 999.99 by committing acts A and B. At trial, Mr. Unlucky argues that, when read properly, the statute does not criminalize acts A and B. The district court rejects the argument and instructs the jury that it may return a verdict of guilty if it finds that Mr. Unlucky committed acts A and B. Because the government puts on undisputed evidence that Mr. Unlucky did in fact commit acts A and B, the jury finds him guilty, and the district court sentences him to eight years in prison. On appeal, the Eleventh Circuit affirms, and rejects Mr. Unlucky’s reading of the statute. The Supreme Court denies certiorari.
Mr. Unlucky then files a timely motion to vacate pursuant to 28 U.S.C. § 2255. Because his contention about the scope of § 999.99 has already been rejected on direct appeal, and there have been no intervening changes in governing law, he is not able to reassert the same claim again. See generally Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012) (“At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding.”). So Mr. Unlucky alleges in his motion that his trial counsel rendered ineffective assistance at sentencing. The district court holds an evidentiary hearing, rejects the ineffectiveness claim on the merits, and grants a certificate of appealability. The Eleventh Circuit subsequently affirms the district court’s denial .of Mr. Unlucky’s motion to vacate, and the Supreme Court again denies certiorari.
Two years later, the Supreme Court decides a case just like Mr. Unlucky’s, and holds that a person who commits acts A and B does not violate § 999.99. This decision by the Supreme Court, of course, means that § 999.99 never criminalized acts A and B, for “[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.” Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994). The decision, moreover, is fully retroactive to cases on collateral review under Bousley v. United States, 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).
So it turns out that Mr. Unlucky never committed the federal offense with which he was charged and for which he was convicted. Yet he sits in a federal prison with about four years left to serve on his senteneé for a non-existent crime.
Mr. Unlucky thinks about filing another § 2255 motion based on the new Supreme Court decision, but quickly finds out that he cannot do so. The problem is that AED-PA permits a second or successive motion to vacate only where newly discovered evidence establishes “by clear and convincing evidence that no reasonable factfinder *1103 would have found the [person], guilty of the offense,” or where there is a “new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.” See 28 U.S.C. § 2255(h)(1)-(2). Mr. Unlucky does not have any newly discovered evidence, and the new Supreme Court decision interpreting § 999.99 is statutory, not constitutional. See In re Thomas, 823 F.3d 1345, 1349 (11th Cir. 2016) (“We have held that [the] Supreme Court has not announced a new rule of constitutional law when it has merely interpreted an existing statute.”). He therefore cannot satisfy the requirements of § 2255(h) for filing a second or successive motion to vacate.
Not wanting to waste more years of his life in prison for a non-existent crime, Mr. Unlucky, relying on the “saving clause” of § 2255(e), files a habeas corpus petition pursuant to § 2241. He requests that the district court vacate his conviction based on the new Supreme Court decision and order his release from custody.
In this setting, can Mr. Unlucky use the “saving clause” to seek habeas corpus relief? I think so.
II
Comprised of a single, bedeviling sentence with various clauses, § 2255(e) states as follows:
An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, [2] unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.
(brackets added).
The first clause of § 2255(e) is the “authorization clause,” and the second clause — the one that has proven most difficult to figure out — is the “saving clause.” As I hope to explain, Mr. Unlucky can use the “saving clause” to file a habeas corpus petition because a “remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention.”
A
“Congress’ use of a verb tense is significant in construing statutes,” United States v. Wilson, 503 U.S. 329, 333, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992), so I begin with the verbs that Congress chose to use in § 2255(e). As Judge Martin correctly points out in her dissenting opinion, see Martin Dissent at 1114-15, Congress’ choice of the word “is” in the “saving clause” is significant.
The “authorization clause” twice employs the past tense (“has failed” and “has denied”), while the “saving clause” uses, a ^single present-tense verb (“is”) right before the words “inadequate or ineffective.” Because Congress used a present-tense verb in the “saving clause,” it seems to me that we must look at Mr. Unlucky’s present situation, and not at what happened in the past, to determine whether a § 2255 motion “is” currently.“inadequate or ineffective.” See Jennifer Case, Text Me: A Text-Based Interpretation of 28 U.S.C. § 2255(e), 103 Ky. L. J. 169, 194 (2014-15) (“Another textual mistake that the circuit courts often make when interpreting § 2255(e)’s [s]aving[ ] [c]lause is to replace the verb ‘is’ with the word ‘was.’ ... When the linking verb is read (as Congress wrote it) in the present tense, the prisoner cannot access § 2241 unless § 2255 is — at the moment her § 2241 petition is filed in *1104 federal court — inadequate [or] ineffective to test the detention’s legality.”).
Contrary to the majority’s approach, we must assess inadequacy and ineffectiveness as of the time Mr. Unlucky files his § 2241 habeas corpus petition, and not as of the time when he submitted his initial § 2255 motion. Otherwise, “Congress[’] use of different sets of verbs, with distinct tenses ... would be pointless[.]” Freeman v. Quicken Loans, Inc., 566 U.S. 624, 132 S.Ct. 2034, 2040, 182 L.Ed.2d 955 (2012). See also Carr v. United States, 560 U.S. 438, 448, 130 S.Ct. 2229, 176 L.Ed.2d 1152 (2010) (“Consistent with normal usage, we have frequently looked to Congress’ choice of verb tense to ascertain a statute’s temporal reach.”); 1 U.S.C. § 1 (“In interpreting the meaning of any Act of Congress, unless the context indicates otherwise ... words used in the present tense include the future as well as the present.”).
This temporal approach to the “saving clause” is not only linguistically proper, it is also historically sound. Before AEDPA, when res judicata did not bar successive § 2255 motions to vacate, see generally Salinger v. Loisel, 265 U.S. 224, 230-31, 44 S.Ct. 519, 68 L.Ed. 989 (1924), federal prisoners sometimes claimed that they could file a § 2241 habeas corpus petition because a motion to vacate would be “inadequate or ineffective” within the meaning of the last paragraph of § 2255 (which is identical to what is now § 2255(e)). In response to such claims, at least some federal courts analyzed whether, at the time of the filing of the § 2241 petition, a § 2255 motion was “inadequate or ineffective.” A good example is the discussion by the former Fifth Circuit in a case where the prisoner, having twice been denied § 2255 relief on a claim relating to his plea, filed a § 2241 habeas corpus petition. The former Fifth Circuit affirmed the dismissal of the § 2241 petition because the prisoner could file another § 2255 motion and have it considered by the sentencing court:
Neither of these [two § 2255] post conviction proceedings is subject to res judicata as such. Consequently, even though the petitioner may have presented this contention to the sentencing court on previous occasions, he is free to assert it again. We have no doubt that the District Court for the Western District of North Carolina mil accord a full and fair hearing and, if appropriate, a right of appeal to the Fourth Circuit in the event that its decision on the merits is adverse to petitioner^]
Birchfield v. United States, 296 F.2d 120, 122 (5th Cir. 1961) (emphasis added and citations omitted).[1]
*1105 B
The majority says that the word “or” (in the phrase “inadequate or ineffective”) merely introduces “ineffective” as a “synonym or ‘definitional equivalent’ ” for “inadequate” (which the majority has replaced with “inadequate remedy at law”). See Maj. Op. at 1087-88. Like Judge Rosenbaum, see Rosenbaum Dissent at 1130, I disagree. The Supreme Court has told us that the “ordinary use [of the word ‘or’] is almost always disjunctive, that is, the words it connects are to be given separate meanings.” Loughrin v. United States, - U.S. -, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (rejecting an argument that would “construe ... two entirely distinct statutory phrases that the word ‘or’ joins as containing an identical element”). So, grammatically, words separated by “or” should not be read as duplica-tive of one another.
Even if the majority is correct that “inadequate” and “ineffective” are interchangeable, I’m not sure its textual analysis is correct. When a statutory term or phrase is undefined, courts try to ascertain its ordinary understanding at the time of enactment. See, e.g., Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). Because the majority looks to 1948 — when the provision that is now § 2255(e) was first enacted — to determine the ordinary meaning of “inadequate” and “ineffective,” I will do the same and consider what those words meant almost seven decades ago.
In the 1940s and 1950s, the word “inadequate” meant “[ijnsufficient; disproportionate; lacking in effectiveness or in conformity to a prescribed standard or measure.” Black’s Law Dictionary 902 (4th ed. 1951) (emphasis added). See also The Concise Oxford Dictionary of Current English 573 (3d ed. 1944) (“Not adequate (to purpose); insufficient.”); Webster’s New Collegiate Dictionary 419 (2d ed. 1949) (“Not adequate; deficient; insufficient.”). So, contrary to the majority’s suggestion, one definition of “inadequate” is tied to the ultimate effect, i.e., the result.
The word “ineffective,” like the word “inadequate,” was also not limited to process in the 1940s and 1950s. Indeed, some definitions linked the word with' results. For example, one dictionary defined “ineffective” as “[n]ot producing the desired effect[.]” The Concise Oxford Dictionary of Current English 583 (3d ed. 1944) (emphasis added). According to another dictionary, “ineffective” meant “[n]ot effective; productive of no effect; ineffectual[.]” Webster’s New Collegiate Dictionary 428 (2d ed. 1949) (emphasis added).[2]
So, even if we assume that the words “inadequate” and “ineffective” meant (and mean) the same thing, that assumption does not help the majority. There is a strong textual argument that the phrase “inadequate or ineffective” is concerned with both procedure (i.e., process) and substance (i.e., results). The phrase can easily be read to have some relationship, some connection, to the ability of a § 2255 movant to file a motion to vacate, as well as his *1106 ability to obtain a desired substantive result.
C
Returning to our fictional case, Mr. Unlucky is unable to file a second or successive § 2255 motion to vacate based on the Supreme Court’s interpretation of § 999.99. That is because § 2255(h) only permits a second or successive motion to vacate when there is newly discovered evidence demonstrating, by clear and convincing evidence, that no reasonable factfinder would have found the person guilty of the offense, or where there is a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. As noted earlier, Mr. Unlucky does not have newly discovered evidence, and his claim is not based on a new rule of constitutional law.
If Mr. Unlucky, who is innocent of the charge that has landed him in prison, cannot even file a second or successive § 2255 motion — and by definition cannot succeed on such a motion — then “the remedy by motion” is presently “inadequate or ineffective” to test the legality of his detention. See In re Davenport, 147 F.3d 605, 611 (7th Cir. 1998) (“A procedure for posteon-viction relief can fairly be termed inadequate when it is so configured as to deny a convicted defendant any opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense. It could indeed ... be thought an inadequacy of constitutional dimensions.”); In re Dorsainvil, 119 F.3d 245, 251 (3d Cir. 1997) (recognizing that the “saving clause” may be broad enough to allow a § 2241 habeas corpus petition where “a defendant [is] imprisoned for a crime that an intervening decision [later] negates”). As I see it, Mr. Unlucky has satisfied the “saving clause,” and can file a habeas corpus petition pursuant to § 2241 which relies on the new Supreme Court decision interpreting § 999.99. Cf. United States ex rel. Leguilllou v. Davis, 212 F.2d 681, 684 (3d Cir. 1954) (interpreting the last paragraph of the former version of § 2255: “[W]e think the remedy by motion can be ‘inadequate or ineffective to test the legality of ... detention’ only if it can be shown that some limitation of scope or procedure would prevent a [§ ] 2255 proceeding from affording the prisoner a full hearing and adjudication of his claim of wrongful detention.”).[3]
D
In order to avoid constitutional problems, the “saving clause” of § 2255(e) must have some meaning. See Boumediene v. Bush, 553 U.S. 723, 776, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008); Swain, 430 U.S. at 381-82, 97 S.Ct. 1224; United States v. Hayman, 342 U.S. 205, 223, 72 S.Ct. 263, 96 L.Ed. 232 (1952). We have a duty to “give effect, if possible, to every clause and word of a statute,” Duncan v. Walker, 533 *1107 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), and if the “saving clause” did not amount to anything in a post-AEDPA world, Congress likely would not have carried it over wholesale in 1996. What makes this case hard is figuring out the proper interplay (and balance) between the “saving clause” of § 2255(e) and the restrictions that § 2255(h) places on second or successive motions to vacate. The content of the “saving clause” must be meaningful, but not so broad that it swallows § 2255(h).
My solution is to draw upon the undisputed — but too often forgotten — principle that “habeas corpus is, at its core, an equitable remedy,” Schlup v. Delo, 513 U.S. 298, 319, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and read the “saving clause” to allow an innocent person like Mr. Unlucky to obtain § 2241 habeas relief. First, from the earliest days of the Republic, the Supreme Court has granted habeas corpus relief and ordered the discharge of federal prisoners where the facts alleged by the government did not constitute a federal crime. See Ex parte Bollman, 8 U.S. (4 Cranch) 75, 136, 2 L.Ed. 554 (1807) (Marshall, C.J.) (“[A]s the crime [of treason] with which the prisoners stand charged has not been committed, the court can only direct them to be discharged.”). Second, the importance of innocence runs deep in our habeas jurisprudence, and there is nothing more inequitable than having a person serve a sentence in a federal prison for a non-existent crime. That is why the Supreme Court, pre-AEDPA, ruled that claims of innocence based on new statutory interpretations can be asserted under § 2255. See Davis v. United States, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (“If this contention [about the intervening change in law] is well taken, then Davis’ conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and presents] exceptional circumstances that justify collateral relief under § 2255.”) (internal quotation marks omitted).
Even those who advocated for a narrower scope of federal habeas review prior to AEDPA recognized that the writ should be available in cases where “a convicted defendant makes a colorable showing that an error, whether constitutional or not, may be producing the continued punishment of an innocent man.” Henry Friendly, Is Innocence Irrelevant?: Collateral Attacks on Criminal Judgments, 38 U. Chi. L. Rev. 142, 160 (1970). I cannot believe that a federal court, with. the “saving clause” available, would deny habeas corpus relief to a person who does not have a § 2255 remedy available but can show, based on a new (and governing) decision, that he never committed a federal crime.[4]
Reading the “saving clause” to allow only claims of statutory innocence under § 2241 does relatively little harm to the structure of § 2255. It gives the “saving clause” a narrow but important scope, and does not do too much violence to § 2255(h)’s restrictions on second or successive motions to vacate.
The line I have drawn, admittedly, is not perfect. If Mr. Unlucky is able to seek habeas corpus relief because a new (and governing) statutory ruling shows that he never committed a crime, why shouldn’t the writ also be available — as Judges Martin and Rosenbaum contend — when a new *1108 statutory decision by the Supreme Court makes it clear that a defendant’s sentence exceeds the statutory maximum? I confess that I don’t have very good answers to that question, but equity — with its concern for justice — does not always draw clean lines, and the finality concerns embodied in § 2255(h) cannot be ignored. If we are going to allow any federal prisoners to use the habeas remedy pursuant to the “saving clause” of § 2255(e), it should be those who are languishing in prison despite having never committed a crime. A criminal justice system run by fallible human beings can tolerate most non-capital sentencing errors, but it cannot, I submit, refuse to hear the claims of those incarcerated for non-existent offenses.
Ill
The majority, understanding that § 2255(e)’s “saving clause” must allow for habeas corpus relief in some circumstances to avoid being illusory, carves out some territory where it posits that the “saving clause” can override § 2255(h)’s restrictions. It offers two main examples of scenarios where § 2241 can be used. First, the majority says that § 2255(e) may be used by federal prisoners challenging determinations about parole or good-time credits. See Maj. Op. at 1089, 1092-93. Second, the majority, like the Tenth Circuit in Prost v. Anderson, 636 F.3d 578, 588 (10th Cir. 2011), says that § 2255(e) allows a federal prisoner to file a habeas petition when his or her sentencing court is no longer available, such as when a military prisoner’s tribunal has been dissolved. See id. at 1092-93. The problem is that these examples ignore the “authorization clause” of § 2255(e).
As explained in Andrews v. United States, 373 U.S. 334, 338, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963), the “motion” that § 2255(e) refers to is a motion to vacate filed by a federal prisoner in the federal court that imposed the sentence. See also Yirkovsky v. Gonzales, 2007 WL 2476766, at *1 (D.S.D. Aug. 27, 2007) (“Petitioner is ‘authorized to apply for relief by motion’ pursuant to [ ] § 2255 because he is a' prisoner in custody pursuant to a federal conviction and sentence who may move the [sentencing] court that imposed the sentence to vacate, set aside or correct the sentence[.]”). As a result, § 2255(e) “operates to bar a § 2241 habeas petition only if § 2255 authorizes the prisoner to bring a ... motion [to vacate]. Importantly, if the [authorization [c]lause is not satisfied, subsection (e) plays no role in determining whether a prisoner can bring his habeas petition.” Case, Text Me, 103 Ky. L. J. at 187.[5]
The majority incorrectly assumes that prisoners challenging determinations about parole and good-time credits, or attacking a sentence imposed by a military tribunal that no longer exists, can file a motion to vacate under § 2255. In the words of § 2255(e)’s “authorization clause,” prisoners in these two scenarios were never “authorized to apply for relief by motion pursuant to this section [i.e., § 2255]” in the first place. And I’m not sure that prisoners sentenced in dissolved territorial courts are any different. A statutory “saving clause” (like the one in § 2255(e)) is a carve-out from the general requirements of a statute, and if the statute does not *1109 apply to begin with, then the “saving clause” never comes into play.
A
Federal prisoners challenging determinations about parole and good-time credits can seek habeas corpus relief pursuant to § 2241. See, e.g., Granville v. Hogan, 591 F.2d 323, 324 (5th Cir. 1979) (good-time credits); Gomori v. Arnold, 533 F.2d 871, 874-75 (3d Cir. 1976) (calculation of release date); Zannino v. Arnold, 531 F.2d 687, 690-91 (3d Cir. 1976) (parole); Halprin v. United States, 295 F.2d 458, 459 (9th Cir. 1961) (parole). But that does not mean that those prisoners can do so because of § 2255(e).
In fact, prisoners challenging determinations about parole or good-time credits have always had to proceed under § 2241 and have never been able to file motions to vacate under § 2255. See, e.g., Hajduk v. United States, 764 F.2d 795, 796 (11th Cir. 1985) (“A challenge to the lawfulness of the parole commission’s actions cannot be brought pursuant to 28 U.S.C. § 2255. Hajduk’s ex post facto argument is nothing more than a challenge to the lawfulness of the parole commission’s actions, not the lawfulness of the sentence imposed by the court. Such an action must be brought as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.”). As a result, Judge Rosenbaum is correct that such prisoners do not come within the “authorization clause” of § 2255(e), and therefore do not need the “saving clause” to avail themselves of a habeas remedy. See Rosenbaum Dissent at 1127-28.
B
The same is true of prisoners challenging a conviction secured in a military tribunal. Like federal prisoners who wish to challenge determinations about parole and good-time credits, federal prisoners convicted and sentenced in military tribunals have long been able to file traditional ha-beas corpus petitions. See, e.g., United States v. Augenblick, 393 U.S. 348, 350, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969); Burns v. Wilson, 346 U.S. 137, 139-142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); Gusik v. Schilder, 340 U.S. 128, 129, 71 S.Ct. 149, 95 L.Ed. 146 (1950); Carter v. McClaughry, 183 U.S. 365, 366-67, 22 S.Ct. 181, 46 L.Ed. 236 (1902); Ex parte Milligan, 71 U.S. 4 Wall. 2, 68-69, 18 L.Ed. 281 (1866); Galley v. Callaway, 519 F.2d 184, 199 (5th Cir. 1975) (en banc).
Allowing a federal military prisoner to file a petition for writ of habeas corpus makes sense because a court-martial (or similar military tribunal) “is a special body convened for a specific purpose, and when that purpose is accomplished its duties are concluded and the court is dissolved.” McClaughry v. Deming, 186 U.S. 49, 64, 22 S.Ct. 786, 46 L.Ed. 1049 (1902). Access to habeas for such prisoners, however, does not come from (or run into the limitations of) § 2255, which is reserved for federal prisoners convicted in, and sentenced by, federal courts.
As noted, the majority cites the Tenth Circuit’s decision in Prost with approval, but in my opinion this aspect of Prost is flawed. Prost relied on an earlier Tenth Circuit decision, Ackerman v. Novak, 483 F.3d 647 (10th Cir. 2007), as support for its suggestion that a military prisoner may resort to the “saving clause” and file a § 2241 petition where a § 2255 motion “ha[s] to be brought in the (now nonexistent) sentencing court, [and] that remedial mechanism [is] necessarily inadequate and ineffective to test the legality of his detention .... ” Prost, 636 F.3d at 588. But the panel in Prost missed the holding of Ackerman.
*1110 In Ackerman, a federal prisoner convicted by a military court-martial sought authorization from the Tenth Circuit, see 28 U.S.C. § 2244(a), to file a second or successive habeas corpus petition under 28 U.S.C. § 2254. See Ackerman, 483 F.3d at 648-49. The Ackerman panel first explained, in no uncertain terms, that a prisoner convicted in, and sentenced by, a military tribunal can seek collateral review only by way of a .habeas corpus petition under § 2241. See id. at 649. Such a prisoner cannot use § 2254 because that provision is reserved for prisoners in state custody, and cannot use § 2255 because his military tribunal has dissolved and cannot entertain a collateral attack. See id. at 649-50 & n.2. The Ackerman panel concluded that, because a military court-martial is not a “court of the United States” within the meaning of § 2244(a), the prisoner did not need to obtain circuit authorization to file a § 2241 habeas corpus petition. See id. at 651-53.
Ackerman, then, provides no support for the claim by Prost, and by the majority here, that a military prisoner needs the “saving clause” of § 2255(e) to file a § 2241 habeas corpus petition. Simply stated, a military prisoner has a § 2241 remedy that is available independent of § 2255. See Clinton v. Goldsmith, 526 U.S. 529, 537 n.11, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999) (“[O]nce a criminal conviction has been finally reviewed within the military system, and a servicemember in custody has exhausted other avenues provided under the [Code of Military Justice] to seek relief from his conviction, he is entitled to bring a habeas corpus petition, see 28 U.S.C. § 2241(c), claiming that his conviction is affected by a fundamental defect that requires that it be set aside.”) (citations omitted); Palomera v. Taylor, 344 F.2d 937, 938 (10th Cir. 1965) (“A motion under 28 U.S.C. § 2255 is not proper here because the petitioner was sentenced by a military court-martial convened in 1944.”).
C
As for prisoners convicted in territorial courts that no longer exist, that is a more nuanced matter. But it is not clear to me that such prisoners need the “saving clause” to file a § 2241 habeas corpus petition. First, if the territorial courts in question are created by the legislature of the territory, then they are not “courts established by an Act of Congress” within the meaning of § 2255(a). See In re Moran, 203 U.S. 96, 104, 27 S.Ct. 25, 51 L.Ed. 105 (1906) (Territory of Oklahoma); Connèlla v. Haskell, 158 F. 285, 287 (8th Cir. 1907) (same). Such courts, therefore, could never entertain a § 2255 motion in the first place, meaning that the “authorization clause” of § 2255(e) would not be satisfied. Second, if territorial jurisdiction is being exercised by federal district courts located in the territory pursuant to an act of Congress, then those district courts can entertain a § 2255 motion to vacate, and the scenario suggested by the majority — that of a sentencing court that no longer exists — is more imagined than real. See Madsen v. Hinshaw, 237 F.2d 370, 371 (9th Cir. 1956) (Territory of Alaska).
In the relatively unusual scenario where a territory becomes a state, and the federal courts in the new state refuse to entertain § 2255 motions by prisoners previously convicted of territorial crimes, a motion to vacate may be “inadequate or ineffective” within the meaning of the “saving clause.” See, e.g., Spaulding v. Taylor, 336 F.2d 192, 193 (10th Cir. 1964) (federal district court in Alaska, following admission to statehood, refused to consider motion to vacate, thereby allowing prisoner convicted of territorial crime to seek a writ of habeas corpus pursuant to § 2241). Even in such circumstances, however, *1111 there are more questions than answers. For example, in a case very similar to Spaulding, the former Fifth Circuit explained that the state courts of Alaska, following Alaska’s admission to statehood, were willing to consider post-conviction motions filed by prisoners previously convicted of territorial offenses. See Hutson v. Zeigler, 362 F.2d 200, 204 & n.9 (5th Cir. 1966). As a result, those prisoners had to proceed under § 2254 in federal court but first had to exhaust their claims in the Alaska state courts. See id. at 204.
Given this tapestry, I do not understand what possible application the “saving clause” has under the majority’s rationale. It seems to me that the majority has come dangerously close to sapping the “saving clause” of any meaning.
IV
I read the “saving clause” of § 2255(e) to permit § 2241 habeas corpus petitions by federal prisoners who can no longer file a motion to vacate and who, based on a new (and governing) statutory decision, are in custody despite never having committed a crime. Because Mr. MeCarthan is not asserting such a claim of innocence, I concur in the judgment.

. For other cases applying a similar temporal scope to the “saving clause,” see, e.g., United States v. Hayman, 342 U.S. 205, 223, 72 S.Ct. 263, 96 L.Ed. 232 (1952) (“Nothing has been shown to warrant our holding at this stage of the proceeding that the [§ ] 2255 procedure will be 'inadequate or ineffective' if respondent is present for a hearing in the [district [c]ourt on remand of this case.”) (emphasis added); Waugaman v. United States, 331 F.2d 189, 191 (5th Cir. 1964) (rejecting prisoner's argument that a § 2255 motion .would be “inadequate or ineffective”: "But if and when [the claims] are presented with sufficient factual particularity, we are confident that the Southern District of Ohio and if necessary on appeal, the Court of Appeals for the Sixth Circuit, would take cognizance of two things. ... There is, therefore, every assurance that the sentencing [c]ourt and the Sixth Circuit will accord the hearing the law requires and will grant the relief which the circumstances justify.”) (emphasis added); and Johnson v. United States, 447 F.2d 516, 517 (5th Cir. 1971) (dismissing habeas corpus petition because prisoner had not sought to file a § 2255 motion to vacate: “Nevertheless, we note that *1105 Johnson has never had his case for post-conviction relief heard on the merits. Our decision is in no way intended to preclude Johnson from filing a properly designated § 2255 motion in the District Court for the District of Wyoming.”) (emphasis added).

. Insofar as “to test” is concerned, one dictionary in the 1940s and 1950s defined "test” as to "[p]ut to the test, make trial of[.]” The Concise Oxford Dictionary of Current English 1266 (3d ed. 1944). Another used a similar definition: ”[t]o put .to the test or proof; to try.” Webster’s New Collegiate Dictionary 878 (2d ed. 1949).

. There are some other pre-AEDPA decisions analyzing what makes a § 2255 remedy "inadequate or ineffective,” but they are not of much help here because in those cases there was a court available to consider the prisoner’s motion to vacate. See, e.g., Adam v. Hagan, 325 F.2d 719, 720 (5th Cir. 1963) (holding that the distance between the place of confinement and the sentencing court does not make a § 2255 motion "inadequate or ineffective”); Scott v. Welch, 192 F.2d 676, 677 (4th Cir. 1951) (concluding that the denial of IFP status does not render a § 2255 motion "inadequate or ineffective”). Cf. Swain v. Pressley, 430 U.S. 372, 381-83, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977) (interpreting a similar "saving clause” in a provision of the D.C. Code and ruling that a post-conviction remedy is not "inadequate or ineffective” just because it is resolved by an Article I court).

. Innocence is so strong a concept that, when sufficiently proven, it even constitutes a judge-made vehicle for avoiding hurdles like procedural default and untimeliness. See, e.g., McQuiggin v. Perkins, - U.S. -, 133 S.Ct. 1924, 1931-35, 185 L.Ed.2d 1019 (2013); House v. Bell, 547 U.S. 518, 522, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006).

. Judge Rosenbaum aptly explains in her dissenting opinion that not all federal collateral claims are "authorized” by motion under § 2255. See Rosenbaum Dissent at 1126-28. And, significantly, not all federal prisoners are authorized to file a § 2255 motion. Instead, "[o]nly federal prisoners who have been ‘sentence[d]’ by a federal court are eligible.” See id. at 1126.